UNITED STATES of America, Plaintiff,

v.

**Bruce ROTH, Defendant.**

**No. 85 CR 763.**

United States District Court,
N.D. Illinois, E.D.

Aug. 13, 1987.

Anton R. Valukas, U.S. Atty., Sheldon T. Zenner and Stephen Crocker, Asst. U.S. Attys., Chicago, Ill., for plaintiff.

Patrick A. Tuite, Tuite, Mejia & Giacchetti, P.C., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

This court's Memorandum Opinion and Order of June 5, 1987, left open two questions presented by the defendant's Motion to Suppress Title III Surveillance. Raised by Roth's adoption of pleadings filed by James Costello and Judge Wayne Olson before Judge Roszkowski in *United States v. Costello*, those issues involved the scope and conduct of the government's eavesdropping on Judge Olson's chambers at Branch 57 of the Circuit Court of Cook County. In an opinion issued June 10, 1985, Judge Roszkowski denied Costello's and Olson's challenge to the surveillance. *See* 610 F.Supp. 1450, 1472–1478 (N.D.Ill. 1985). I have reviewed the entire file and find Judge Roszkowski's decision to be well considered.[1] Accordingly, I adopt Judge Roszkowski's reasoning and conclusions here. Roth's remaining challenge to the wiretap is therefore denied.

Roth argues, first, that the conduct of the bugging "so unreasonably exceeded" the scope of Chief Judge Parsons' authorization order as to render it void under Fourth Amendment principles. Accordingly, Roth asks that all evidence flowing from the surveillance be suppressed. *See United States v. Suquet*, 547 F.Supp. 1034, 1039–43 (N.D.Ill.1982) ("flagrant disregard" of surveillance order's limiting provisions justifies complete suppression). The second argument, which expresses similar concerns, is based on Title III's "minimization" requirement. 18 U.S.C. § 2518(5).

■ That provision mandates that electronic surveillance "be conducted in such a way as to minimize the interception of communications not otherwise subject to interception" under Title III. 18 U.S.C. § 2518(5). The clear purpose of the section is to prevent the indiscriminate seizure of conversations made "without regard to their connection to the crime under investigation,"—a practice the Supreme Court found unconstitutional in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). Although it is the responsibility of the government to demonstrate, as a prima facie matter, that reasonable efforts were made to minimize non-pertinent conversations, the ultimate burden of persuasion on the issue rests with the defense. *Suquet*, 547 F.Supp. at 1042, n. 19, *quoting United States v. Quintana*, 508 F.2d 867, 875 (7th Cir.1975).

■ The Supreme Court has cautioned that any inquiry into the government's behavior under § 2518(5) necessarily depends on the facts and circumstances of each case. *Scott v. United States*, 436 U.S. 128, 140, 98 S.Ct. 1717, 1724, 56 L.Ed.2d 168 (1978). Given the realities of electronic eavesdropping, courts have afforded the government wide latitude in intercepting conversations. *See United States v. Dorfman*, 542 F.Supp. 345, 389 *et seq.* (N.D.Ill. 1982), *aff'd United States v. Williams*, 737 F.2d 594 (7th Cir.1984), *cert. denied*, 470 U.S. 1003, 105 S.Ct. 1354, 84 L.Ed.2d 377 (1985); *Suquet*, 547 F.Supp. at 1036, *et seq.* The essential question, nevertheless, remains whether the government did "all that it could to avoid unnecessary intrusion" by the surveillance team. *Suquet*, 547 F.Supp. at 1046, *quoting Quintana*, 508 F.2d at 874. *See also* Lafave and Israel, *Criminal Procedure* § 4.5 at 237 (1985) ("it must be emphasized that the statute does not absolutely forbid ... interception [of non-pertinent conversations], but merely requires that measures be adopted to reduce the extent of such interception to a practical minimum").

---

1. In addition to considering the papers, Judge Roszkowski held two days of evidentiary hearings and heard oral argument on the issues presently before me. The parties here have agreed to adopt the record of those hearings; no additional evidence or argument has been presented to this court.

■ Considering the evidence presented before Judge Roszkowski, I find that the monitoring agents made reasonable efforts to minimize their interception of non-pertinent conversations [2] and that they did not "flagrantly disregard" the terms of the court order. The record shows that the three agents, two of whom were attorneys, were specifically apprised of the importance of mimimization in a Title III investigation. Those concerns were accentuated in this investigation due to the ethical and legal problems posed by the bugging of a judge's chambers. To this end, the monitoring agents reviewed several minimization procedures memoranda and conferred with the assistant United States attorneys supervising the case. These memoranda discussed, *inter alia,* the importance of immediately terminating the interception of legally privileged conversations. The agents also studied voice familiarization tapes prior to the monitoring in order to aid them in identifying the targets of the investigation.[3] Although no specific time limit was set, the agents all understood that they were to discontinue monitoring a conversation after "a few minutes" unless the communications overheard were pertinent to the investigation. *See* Gov.App. D at 136, 281 (testimony of FBI Agent William C. Megary); 306–307 (testimony of FBI Agent James A. Hersley); 327, 333 (testimony of FBI Agent Larry M. Dickerson).[4]

Special minimization procedures, in addition, were ordered for the initial phase of the surveillance by top Justice Department officials including then-FBI Director William Webster. These included a prohibition on monitoring conversations determined not to include one of the named targets of the investigation. The November 29, 1980 minimization memorandum states: "Only if the monitoring agent determines that a conversation is criminal in nature before he is able to determine that the participant with Judge Olson is not one of the five named individuals may the conversation of an unnamed individual be monitored." Conversations involving more than two participants were also to be minimized. Supplemental Minimization Memo of November 13, 1980. To facilitate implementation of these special procedures, a radio signaling system was devised by which FBI mole Terry Hake could alert the monitoring agents to the presence of targets in the judge's chambers.[5]

These self-imposed special procedures, which were implemented out of concern for the sensitivity of the surveillance, were to be suspended upon interception of conversations evidencing clearly criminal behavior on the part of Judge Olson. After notice to the authorizing judge, "normal" minimization requirements were to be followed. The evidence of criminality came on December 3, 1980—three days into the bugging. On that date, FBI Agent William Megary intercepted a conversation between Judge Olson and defendant Roth which the government characterized as clearly criminal. *See* Def.Mem. in Support of Motion to Suppress, Exhs. 3 and 4 (interim report to Judge Parsons and accompanying affidavit of FBI Agent Randall Jordan). The relaxed minimization procedures were imple-

2. The duty to minimize only applies to "communications not otherwise subject to interception" under Title III. 18 U.S.C. § 2518(5). "This suggests that a communication is pertinent and thus not subject to the minimization limitation if it in some respect provides information helpful to the investigation, without regard to whether it includes an incriminating remark directly implicating the speaker in criminal activity." Lafave and Israel, *Criminal Procedure* § 4.5 at 237 (1985).

3. The government did not have a voice sample for one or two of the targets listed in the wiretap application. *Compare* Gov.App. C at 168 (testimony of FBI Agent William C. Megary) with the Government's Supplemental Minimization Memorandum of November 13, 1980, at ¶ 2.

4. The agents testified that they considered pertinent *ex parte* communications between a lawyer and the judge and conversations including whispering or muffled voices, discussions of cases and money. Because the agents were concerned with the possible concealment of assets for income tax purposes (although tax evasion was not a crime enumerated in Judge Parsons' order), they monitored discussions of Judge Olson's property and finances. *See* Gov.App. D at 336 (testimony of Agent Dickerson).

5. The signaling system proved cumbersome and confusing. Its use was soon abandoned.

mented two days later. Gov.App. C at 39–40 (testimony of Agent Megary).

There is no evidence in the record, as far as I can tell, that the monitoring agents violated these procedures on a systematic basis, if at all. It may be true, as the proceedings before Judge Roszkowski suggest, that the government improperly failed to minimize perhaps as many as 36 conversations. Gov.App. D at 267–69 (testimony of Agent Megary). Because these conversations amounted to only 1.4% of the total number of interceptions (2,535) and less than 3% of those communications lasting long enough to minimize (1,214), I cannot conclude that the monitoring agents conducted a general search which flagrantly disregarded the terms of Judge Parsons' authorization order.[6] Nor is there any real evidence of bad faith on the part of the agents in carrying out the bugging. *But see Scott*, 436 U.S. at 135–39, 98 S.Ct. at 1722–24 (lack of good faith on part of monitoring agents not determinative of whether a minimization violation has occurred); *Suquet* at 1042 (explaining role of good faith in minimization analysis after *Scott*).

Because Roth has not put forward evidence demonstrating the presence of a general search, his fourth amendment and statutory challenge seeking total suppression of the surveillance fails. Since the court cannot suppress individual, non-pertinent criminal conversations absent such a pattern of abuse, the request to bar from evidence the communications discussed in the defendant's adopted brief is also denied. Roth App. I at 140, *et seq. See*

---

**6.** These numbers are based on the government's assumption that 180 seconds constitute a reasonable period of time in which to determine the nature of a conversation. It is important to realize that the 180 second standard is used for classification purposes only and was not the basis for the minimization decisions at the time of the actual surveillance. As explained above in text, the monitoring agents followed the more informal standard of "a few minutes."

The defendant urges through his adopted pleadings that this court use times of 30, 60, and 90 seconds as benchmarks for classifying the conversations. Because I agree with Judge Roszkowski's reasoning in adopting the government's larger time period, I reject the defendant's suggestion. *See Costello* at 1476. For the

*Costello* at 1477; *Dorfman*, 542 F.Supp. at 394–95 (N.D.Ill.1982).[7]

### Conclusion

For the reasons stated herein, the remainder of the defendant's Motion to Suppress Title III Surveillance is denied.

It is so ordered.

same reason, I accept the government's calculation as to the total number of conversations intercepted. *Id.* at 1475–76.

The 3% figure cited above, it should be noted, is equivalent to 10.6% of the total intercepts that were long enough to minimize and that *were not* minimized. This is the figure that Judge Roszkowski relied on in his opinion to dismiss the *Costello* defendants' motion to suppress the entire Title III surveillance on a flagrant failure to minimize theory. *Costello* at 1476.

**7.** Because I agree entirely with Judge Roszkowski's comments regarding the monitoring agents' failure to record and minimize listening to Judge Olson's empty chambers, I do not address the issue here. *See Costello* at 1477–78.